**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**JANNA GRANT**

**Plaintiff,**

**v.** **No. 8:26-cv-01985-VMC-SPF**

**ASHLEY FURNITURE INDUSTRIES, LLC**

**Defendant.**

---

**PLAINTIFF'S RESPONSE AND MEMORANDUM IN OPPOSITION TO DEFENDANT'S PARTIAL MOTION TO DISMISS**

Plaintiff, through counsel, files this Memorandum in Opposition to Defendant's Motion to Dismiss pursuant to Rule 12(b) of the Federal Rules of Civil Procedure. [Doc. 47].

**STATEMENT OF THE CASE**

This is an action filed against Ashley Furniture Industries, LLC ("Defendant"), alleging discrimination and retaliation through the termination of Plaintiff's longtime employment. Plaintiff has brought claims for: (1) gender discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. ("Title VII"); (2) retaliation in violation of Title VII; (3) age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. 621, *et seq*. ("ADEA"); (4) retaliation in violation of the ADEA; and (5) wrongful termination in violation of North Carolina's public policy as expressed in N.C. Gen. Stat. § 143-422.2. A detailed Amended Complaint was filed and contains

specific allegations with regard to the wrongdoings committed upon Plaintiff by Defendant. [Doc. 16]. This matter is currently before the court on Defendant's Partial Motion to Dismiss under 12(b) of the Federal Rules of Civil Procedure.

This Court should deny Defendant's Partial Motion to Dismiss. From a broad perspective, Defendant asks this Court to hold Plaintiff's pleadings to a standard far above what the relevant caselaw prescribes. More specifically, Defendant wrongly portrays Plaintiff's well-pled facts as conclusory, and disregards that Plaintiff has – under any standard – pled a *prima facie* case of age discrimination with additional circumstantial evidence supporting age-bias. Moreover, Defendant seeks dismissal of Plaintiff's retaliation claims due *solely* to an alleged lack of temporal proximity; and while a lack of temporal proximity may not support an *inference* of retaliation, it is not dispositive, and may be overcome by intervening events and other evidence to support retaliation. In short, Plaintiff presents a case with documented and timely protected activity, in which she specifically objects to age and gender animus displayed by her supervisor, and is subsequently terminated at Defendant's first opportunity to do so. As such, Plaintiff respectfully requests that this Court deny Defendant's Partial Motion to Dismiss, and permit Plaintiff to proceed to discovery and an adjudication of her claims on the merits.

## **STATEMENT OF RELEVANT FACTS**

As detailed in her Amended Complaint, Plaintiff is a female who was born in April 1967, and is presently 59 years of age. At the time of her termination, she

was 56 years of age. Plaintiff was initially employed by Defendant in January, 2005, as an Associate Marketing Specialist, was promoted in June, 2006 to Senior Marketing Specialist, and served Defendant with excellence for nineteen years, or until her retaliatory termination on November 29, 2023. [Doc. 16, ¶¶ 4-5]. Over the course of her decorated and exemplary tenure, Plaintiff drove substantial revenues for Defendant, her performance history was unblemished, and she was a leader within the company. She was salesperson of the year for Defendant's Casegoods Division in 2019, and in 2023, her final year working for Defendant, Plaintiff's sales were the second-most in her division. [Doc. 16, ¶¶ 11-12].

During her tenure, Plaintiff single-handedly built central and eastern North Carolina into key regions for Defendant's sales, and cultivated numerous successful and profitable relationships. [Doc. 16, ¶ 9]. Throughout her employment, Plaintiff was commended for her performance, and her sales numbers, leadership, and commitment to Defendant met or exceeded any reasonable expectations of her role. Accordingly, Plaintiff was never the subject of any disciplinary action, she was never made aware of any performance problems, and Defendant referred to Plaintiff as a leader for the company. By any metric, Plaintiff was extraordinarily successful, and her performance resulted in enormous revenues for Defendant. [Doc. 16, ¶¶ 11-12].

In 2022 Plaintiff began reporting to a new supervisor who was significantly younger, male, and Vice President of Casegoods (VP) for Defendant. Plaintiff noted immediately that the VP displayed age and gender animus towards Plaintiff,

which was evident from his interactions with younger, male employees. [Doc. 16, ¶¶ 37-38]. In July, 2022, the VP asked what Plaintiff's fiancé did for a living, and commented upon her response that it "sounded like" she "didn't need to work." [Doc. 16, ¶ 39]. Shocked, she subsequently escalated the matter to Defendant's president, in an effort to insulate herself from future discrimination. [Doc. 16, ¶ 40]. Nevertheless, in January, 2023, the VP remarked that "since you don't have kids," and "you've made enough money and [have] probably been smart with it, [you are] probably in a place where you could retire." Plaintiff was so taken aback and concerned for her job that she specifically objected to gender and age discrimination in an email to the VP, and again escalated the objections to Defendant's president, both verbally and via email. In the email, Plaintiff noted the disparate treatment Plaintiff had endured as compared to her substantially younger, male colleagues. [Doc. 16, ¶¶ 40-44].

The VP never responded to Plaintiff's email, but his anger at her objections and escalation was apparent to Plaintiff. He directly expressed frustration to her about being questioned by Defendant's management regarding the exchange, and until her termination, the VP was cold and hostile to Plaintiff, particularly as compared to her younger, male colleagues. Specifically, and while he had no basis to criticize her performance and sales revenues, he was condescending towards Plaintiff, ostracized her in her position, and seemed intent on pushing her from the company. Over the latter half of 2023, management shifted one large account from Plaintiff, and otherwise prepared Plaintiff's substantially younger and male

colleagues to assume her duties, in apparent anticipation of forcing her from the company. [Doc. 16, ¶¶ 45-47].

Following that period of retaliatory acts, Defendant ultimately declined to renew Plaintiff's contract – which had essentially "auto-renewed" for nineteen years – and terminated her employment. On November 29, 2023, the VP called Plaintiff to inform her that Defendant was not continuing her employment nor renewing her contract for 2024. He did not offer any explanation. [Doc. 16, ¶ 51]. Following Plaintiff's termination her job duties, responsibilities, and her book of business – that she had developed over two decades working for Defendant – were all distributed to substantially younger and/or male colleagues. [Doc. 16, ¶ 53].

Plaintiff's replacements were all male, and – at least two of them – were more than fifteen years her junior, less experienced and less qualified for the job, and assumed her duties while performing at a lower level than Plaintiff. [Doc. 16, ¶¶ 53-54, 73]. At the time of her termination, Plaintiff had never had a bad review, had never been the subject of any disciplinary action or reprimand, and had never been put on a performance improvement plan. To date, Plaintiff has never been offered any explanation for her abrupt termination. [Doc. 16, ¶ 52]. The termination of Plaintiff's employment – forecasted by her earlier conversations with the VP, and his apparent age and gender animus – was pretextual discrimination, and retaliation based on Plaintiff's documented protected activity. As a result of Defendant's actions, and Plaintiff's inability to attain comparable

employment, Plaintiff has suffered extraordinary damages; financially, emotionally, and professionally. [Doc. 16, ¶¶ 55-56].

## ARGUMENT

### I. Legal Standard on a Motion to Dismiss pursuant to Rule 12(b).

With respect to Defendant's 12(b) motions, the Court must accept as true all well-pled factual allegations contained in the Complaint, *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197 (2007)(per curiam), and construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face. *Iqbal*, 556 U.S. at 678. To survive a motion to dismiss, the complaint must only "state[] a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct" based upon "its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Under this plausibility standard, a complaint need not contain "detailed factual allegations," and while it must contain "more than labels and conclusions," it "does not require that a complaint set forth all the "additional facts that [a plaintiff] would need at the trial stage to support his claim." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964 (2007).

Indeed, the Eleventh Circuit has found error in imposing a heightened pleading requirement that would have a complaint set forth all facts required at

the summary judgment stage. Dismissal is warranted "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint." *Picado v. M&S Cargo Express Corp.*, No. 24-21982-CV-WILLIAMS, 2024 U.S. Dist. LEXIS 168181 (S.D. Fla. Sep. 18, 2024) (citing *Shands Teaching Hosp. & Clinics, Inc. v. Beech St. Corp.*, 208 F.3d 1308, 1310 (11th Cir. 2000)). A plaintiff must plead facts that provide for more than the “sheer possibility” that a defendant has acted unlawfully. *See Tauber v. City of Pelham, No. 2:25-cv-00663-SGC, 2026 LX 130958* (N.D. Ala. Mar. 19, 2026).

## II. Plaintiff has clearly articulated her ADEA discrimination claim.

Defendant, in its Partial Motion to Dismiss, seeks dismissal of Plaintiff’s claim under the ADEA. Put succinctly, accepting Defendant's position requires both ignoring the relevant caselaw and disregarding the clear allegations within the Amended Complaint. Defendant’s arguments as to dismissal of Plaintiff’s ADEA claim consistently attempt to hold Plaintiff to a summary judgment standard at the pleading stage, a posture that this Court should reject. In its briefing, Defendant has ignored Plaintiff’s burden at this stage, and instead argues that Plaintiff has not pled enough direct evidence of age animus or fully developed her arguments as to similarly situated comparators. As this Court is well aware, that evidence is not required at the pleading stage in a discrimination case.

The Supreme Court and the Eleventh Circuit have long recognized that a plaintiff alleging employment discrimination may prove the case by a judicially created scheme which allocates burdens of persuasion and burdens of production.

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973); *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S. Ct. 1089 (1981); *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S. Ct. 2742 (1993); *Lee v. Russell Cnty. Bd. of Educ.*, 684 F.2d 769, 773 (11th Cir. 1982). In an ADEA discharge case, plaintiff must show that (1) she was in the age group protected by the ADEA; (2) she was a qualified individual; (3) she suffered an adverse employment action; and (4) she was replaced by a person substantially younger. *See Kragor v. Takeda Pharmaceuticals America, Inc.,* 702 F.3d 1304, 1308 (11th Cir. 2012)*, see also Testa v. GSA Access Grp., LLC,* No. 8:24-cv-2739-CEH-SPF, 2025 LX 485365 (M.D. Fla. Oct. 17, 2025). Plaintiff – under any applicable framework – has more than met her burden at this stage of the proceedings through fully pleading her *prima facie* case. As the Eleventh Circuit Court of Appeals held in *Davis v. Miami-Dade Cnty.*, No. 23-12480, 2024 U.S. App. LEXIS 22527 (11th Cir. Sep. 5, 2024), a plaintiff establishing a *prima facie* case through her pleading "will *a fortiori* survive a motion to dismiss, because *McDonnell Dougl*as requires all the elements of a fully stated claim, and more." *Id.* at 9.

Nevertheless, Eleventh Circuit courts have made clear that a *prima facie* case is not necessary at *any* stage of the proceedings[1], and certainly not at the pleading stage. *See Buchanan v. Delta Air Lines, Inc.*, 727 Fed. Appx. 639, 641

[1] Courts in the Eleventh Circuit have consistently held that, even at the summary judgment stage, the plaintiff will survive summary judgment if he presents circumstantial evidence that creates a triable issue concerning an employer's discriminatory intent. *See Holifield v. Reno,* 115 F.3d 1555, 1562 (11th Cir. 1997) (in cases where a plaintiff cannot establish a *prima facie* case, summary judgment will only be "appropriate where no other evidence of discrimination is present.").

(11th Cir. 2018). In *Buchanan,* the Eleventh Circuit rejected the same arguments proffered by Defendant in the instant case. Specifically, the court confirmed that the *McDonnell Douglas* burden-shifting analysis is an *evidentiary* framework, and not a pleading standard. Like the Plaintiff in the instant case, the *Buchanan* plaintiff articulated claims based on an excellent work record, lack of any credible reason for her discharge, and circumstantial evidence regarding management's preference for younger employees. The court found that "together, these allegations are enough to make out a plausible claim that the stated reasons for her termination were pretextual and that her age was the cause of her termination." *Buchanan* at 642.

In its Motion, Defendant's primary argument for dismissal rests on its claim that Plaintiff does not fully develop facts regarding Plaintiff's "similarly situated comparators." This argument fails for a number of reasons. First, Plaintiff's *prima facie* case does not require "similarly situated" comparators in a discharge case in which she is replaced by a substantially younger individual. *See O'Connor v. Consol. Coin Caterers Corp.,* 517 U.S. 308, 116 S. Ct. 1307 (1996), *Liebman v. Metro. Life Ins. Co.*, 808 F.3d 1294 (11th Cir. 2015), *Smith v. Healthcare Auth. for Baptist Health,* No. 2:20cv887-MHT, 2022 U.S. Dist. LEXIS 50741, 11 (M.D. Ala. Mar. 22, 2022). In fact, in *Liebman,* the Eleventh Circuit Court of Appeals indicates that "substantially younger" can mean as little as three years age difference. *Id.* At 1299. In her Amended Complaint, Plaintiff clearly articulates that two of her replacements were "more than fifteen years her junior." [Doc. 16,

¶ 54]. Plaintiff has met her burden in regards to the fourth element of a *prima facie* case.

Second, as noted above, Plaintiff need not – even though she has – plead a full *prima facie* case in order to survive the pleading stage. In fact, Eleventh Circuit courts have held that neither the *prima facie* case *or* the "convincing mosaic" cited by numerous Eleventh Circuit courts are necessary at this stage, though they may assist the court at summary judgment. Nevertheless, Plaintiff has pled numerous pieces of compelling circumstantial evidence that, at the least, suggest that she may develop a record that paints the convincing mosaic of which courts write. As the *Davis* court holds, a single item of evidence can potentially suffice to create the mosaic, and could consist of suspicious timing, ambiguous statements, or other information relevant to discriminatory intent. *Davis* at 11.

In *Davis,* the court rejected a similar argument to those made by Defendant in the present case; namely, that he had failed to fully allege similarly situated employees outside his protected class who enjoyed more favorable treatment. The court rejected the argument, holding that the plaintiff's complaint alleged that plaintiff was terminated following an invariably successful career without any credible explanation. As the court held, a court is "free to scrutinize an employer's decision to check that it is not mere pretext for discrimination." *Id.* at 13. Moreover, "an employer's failure to articulate…the reason for an employee's discharge may serve as evidence of pretext." *Hurlbert v. St. Mary's Health Care Sys. Inc.,* 439 F.3d 1286, 1298 (11th Cir. 2006).

As noted above, Defendant has *never offered a reason* for Plaintiff's abrupt termination. She was considered a leader by Defendant, was salesperson of the year in 2019, and was one of the most successful salespeople in the company, *including* in the year she was effectively terminated. She was never disciplined, never reprimanded, and never put on notice of any performance issues. In the face of that employment record, Plaintiff was abruptly terminated in 2023, after nearly twenty years of continuous service, without so much as an explanation. That alone provides significant evidence of pretext.

But, of course, Plaintiff offers additional and compelling circumstantial evidence of discriminatory intent. Specifically, she recounts in detail two incidents in which her supervisor, Defendant's VP, displayed gender and age animus towards her continued employment. Specifically, in August 2022, the VP indicated that she likely "didn't need to work" given her fiancé's career and income, and in January, 2023, he stated that since "she didn't have kids," and had "made enough money and [have] probably been smart with it, [you are] probably in a place where you could retire." [Doc 16, ¶¶ 39, 42]. And while the August comment may potentially be viewed as being more gender-biased than age-biased, the January comment suggests both gender and age animus, particularly given the fact that the VP was "significantly younger" than Plaintiff. In any event, on January 7, 2023, Plaintiff sent an email in which she accused the VP of gender *and* age bias, and "specifically noted the different way the VP treated Plaintiff's...colleagues" as

compared to her. She subsequently escalated the matter to Defendant's president both verbally and through email. [Doc 16, ¶¶ 43-44].

In its Memorandum, Defendant attempts to isolate the two statements from the larger context of Plaintiff's additional evidence, and argues that Plaintiff's age claim should be dismissed. This, of course, ignores the relevant standard, the "mosaic" of the *prima facie* case and circumstantial evidence, and the proverbial forest for the trees. Plaintiff has not and does not claim that those two interactions are dispositive – rather, she asserts that, when viewed with other evidence she has presented, forms a plausible claim of age discrimination.

Plaintiff also clearly articulates the various ways in which the VP treated her as less than her substantially younger colleagues. In her Amended Complaint, she asserts the following:

- The VP treated substantially younger employees more favorably in the way he interacted with them [Doc 16, ¶ 38];

- The VP was cold and hostile to Plaintiff, as compared to her younger colleagues [Doc 16, ¶ 46];

- The VP was condescending to Plaintiff, ostracized her in her position, and seemed intent on pushing her from her position [Doc 16, ¶ 46];

- Defendant's management shifted a large account from Plaintiff, and otherwise prepared Plaintiff's younger colleagues to assume her duties [Doc 16, ¶ 47];

- Following Plaintiff's termination, her job duties, responsibilities, and her book of business were all distributed to substantially younger colleagues, two of which were more than fifteen years her junior. [Doc 16, ¶¶ 53-54].

The above allegations are more than "conclusory" statements and contain the factual specificity necessary at the pleading stage. Notably, Defendant has not offered a single case that supports its conclusion that Plaintiff has not fully pled her claims. To the contrary, Defendant has cherry-picked lines from a number of cases in order to support its conclusion, none of which actually do so.

The fact that Plaintiff's employment contract was non-renewed after nineteen years of continuous employment, coupled with the above circumstantial evidence and her *prima facie* case, form a plausible claim for relief. She has described discrimination, documented objections to the discrimination, a distinct shift in management's attitude towards her following those objections, and disparate and retaliatory treatment culminating in her termination. She also pled that her territory – the book of business she spent an entire career building – her responsibilities, and her job duties were *all* divided amongst substantially younger, male employees, two of which were more than fifteen years younger than she. Plaintiff has met her burden.

Plaintiff presents a similar analysis to this court as Sandra Testa, though Ms. Grant has pled significantly more details in regards to her discriminatory treatment. *See Testa v. GSA Access Grp., LLC,* No. 8:24-cv-2739-CEH-SPF, 2025 LX 485365 (M.D. Fla. Oct. 17, 2025). In that complaint, Ms. Testa asserted that she was an "exemplary, productive employee," who was treated differently than "younger employees" and following her termination her "duties were given to younger personnel." *Id.* at 10-11. Additionally, she asserted that she was told by

the defendant that she should "retire and enjoy her senior years." *Id.* at 5. Like Defendant in the instant case, the defendant in *Testa* argued that the plaintiff had not met the fourth element of the *prima facie* case because Ms. Testa had allegedly failed to allege that she was "replaced by a substantially younger person." *Id.* at 9. The court in *Testa* concluded that she was not required to plead her *prima facie* case, given the other evidence presented. In *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321 (11th Cir. 2011), the court came to a similar conclusion, noting the "various forms" of circumstantial evidence available to a plaintiff in the absence of comparator evidence, and the "flexible nature of the *McDonnell Douglas* framework. *Id.* at 1328.

As noted above, Defendant has not cited a single case that supports the dismissal of Plaintiff's ADEA claim at this point in the proceedings. As to the facts alleged regarding Plaintiff's replacements, courts have consistently rejected similar arguments regarding the necessity of providing names, titles, or age. *See Smith v. Healthcare Auth. for Baptist Health,* No. 2:20cv887-MHT, 2022 U.S. Dist. LEXIS 50741, 11 (M.D. Ala. Mar. 22, 2022) ("It is not problematic…that Smith does not allege the names, races, and ages of each of her replacements. Smith's allegation that…[her replacement was] significantly younger than she is not a legal conclusion, but a factual allegation that must be taken at the motion-to-dismiss stage as true"). *See also Mullins v. AlaTrade, Inc.,* No. 3:22-cv-112-JTA (WO), 2023 LX 151677 (M.D. Ala. Feb. 3, 2023) ("replaced with a significantly younger

employee" and allegations of favorable treatment to "younger employees," while "not very detailed," are sufficient at the pleading stage).

To the contrary, cases cited by Defendant are either irrelevant due to substance: *ADA v. Cigna Corp.*, 605 F.3d 1283 (11th Cir. 2010) (RICO allegations), *Henderson v. JP Morgan Chase Bank, N.A.*, 436 F. App'x 935 (11th Cir. 2011) (home loan and fair housing matter, *no evidence* establishing discrimination); irrelevant due to the procedural posture: *Lewis v. City of Union City*, 918 F.3d 1213, 1224 (11th Cir. 2019) (summary judgment, additionally not a "replacement" case), *Dilla v. West*, 179 F.3d 1348 (11th Cir. 1999) (appeal following bench trial); or are readily distinguishable: *Rhenals v. Fed. Express Corp.*, No. 1:24-cv-22556, 2024 LX 73977 (S.D. Fla. Nov. 4, 2024) (plaintiff failed to allege disparate treatment *or* replacement by a younger individual); *Tarnoff v. iSolved, Inc.*, No. 6:25-cv-00955-PGB-LHP, 2025 LX 313291 (M.D. Fla. Aug. 23, 2025) (plaintiff gives *no* information regarding replacement), *Polakovic v. Univ. of Mia.*, 816 F. Supp. 3d 1304 (S.D. Fla. 2026) (plaintiff hired at 65 and fired at 66, provided no evidence of replacement *or* disparate treatment).

Accordingly, the Court should deny Defendant's motion as to her ADEA claim. Plaintiff has pled a *prima facie* case, and provided circumstantial evidence supporting discriminatory intent in regards to age. Indeed, Plaintiff has presented a paradigm case for age discrimination: she faced immediate and unfounded criticism from a new supervisor, noted clear signs of disparate treatment as compared to her younger co-workers, she ranked highly in objective criteria yet

was terminated, her termination was pretextual and unsupported by the facts, and her job duties were distributed to significantly younger employees. Indeed, when coupled with the comments reflecting age-based bias, Plaintiff has presented a compelling case, and Defendant's Motion must be denied.

## III. Plaintiff has clearly articulated her Title VII and ADEA retaliation claims.

Defendant has also alleged that Plaintiff has failed to sufficiently plead her retaliation claims. Specifically, Defendant contends that Plaintiff has not adequately alleged causation because the temporal proximity between her protected activity and her termination – approximately nine months – is not close enough to infer causation. The Court should reject that argument. To establish a *prima facie* case of retaliation under both the ADEA and Title VII, Plaintiff must allege that (1) she engaged in protected activity; (2) the employer took a materially adverse action; and (3) a causal connection existed between the two. *See Bryant v. Jones,* 575 F.3d 1281 (11th Cir. 2009) (establishing elements for action under 42 U.S.C. § 1981 and Title VII)*; Cardelle v. Miami Beach Fraternal Ord. of Police,* 593 F. App'x 898, 903 (11th Cir. 2014) (retaliation under ADEA involves the same elements).

Defendant apparently concedes elements 1 and 2, insofar as it declines to address them. Nevertheless, Plaintiff clearly alleges protected activity, through her objections to and escalation of the discriminatory statements made to her by the VP. She specifically alleges that she escalated the August, 2022 comments

regarding her fiancé's career and income to Defendant's president, and that she memorialized the January, 2023 comments in an email to the VP on January 7, 2023, in which she stated that the comments revealed gender and age animus and noted disparate treatment, and subsequently verbally escalated the concern and forwarded her email to Defendant's president approximately two weeks later. Obviously, Plaintiff suffered an adverse employment action upon her subsequent termination from employment. Plaintiff has pled the first two elements of her retaliation claims.

Plaintiff has likewise satisfied the third element of causation, particularly at this stage of the proceedings. Following her protected activity, Plaintiff has alleged the following actions of Defendant:

- The VP was angered by her escalation of her objections to Defendant's president, and expressed frustration to her directly [Doc 16, ¶ 45];
- The VP was cold and hostile to Plaintiff, as compared to her younger colleagues [Doc 16, ¶ 46];
- The VP was condescending to Plaintiff, ostracized her in her position, and seemed intent on pushing her from her position [Doc 16, ¶ 46];
- Defendant's management shifted a large account from Plaintiff, and otherwise prepared Plaintiff's younger colleagues to assume her duties [Doc 16, ¶ 47];
- Plaintiff was terminated upon expiration of the contract. [Doc 16, ¶ 51].

In short, Plaintiff has established a chain of actions following her protected activity that culminated in her termination. Plaintiff's annual contract with Defendant – which had been routinely renewed for nineteen years – was abruptly discontinued

without explanation. Given the parties' historical contractual backdrop, Plaintiff was terminated at the first logical opportunity following her protected activity. As the Eleventh Circuit Court of Appeals held in *Olmsted v. Taco Bell Corp.*, 141 F.3d 1457, 1460 (11th Cir. 1998), a plaintiff merely has to prove that the protected activity and the . . . [adverse] action are not completely unrelated." Plaintiff has more than met that burden.

As to its arguments regarding temporal proximity, close temporal proximity is not *required* to establish causation, even though a plaintiff may lose the *inference* of causation. Moreover, at the pleading stage, the absence of temporal proximity does not defeat a retaliation claim, particularly when a Plaintiff has alleged other evidence of causation. *See Petrelli v. Renal Advantage, Inc.,* No. 26-14077-CV-MIDDLEBROOKS, 2026 LX 148506 (S.D. Fla. Apr. 16, 2026) (causation may be shown by means other than temporal proximity); *Boyland v. Corr. Corp. of Am.*, 390 F. App'x 973, 974-75 (11th Cir. 2010) (holding that without temporal proximity a plaintiff may be able to establish causation where intervening retaliatory acts commenced shortly after the plaintiff engaged in a protected activity); *Hutchinson v. Auburn Univ.*, No. 3:18-cv-389-ALB, 2020 U.S. Dist. LEXIS 67727 (M.D. Ala. Apr. 17, 2020) (circumstantial evidence may suffice for causation in absence of temporal proximity; collection of cases). Eleventh Circuit courts have refused to grant motions to dismiss based on gaps of up to *two years* between protected activity and an adverse employment action, provided other

evidence was forecasted. *See El-Saba v. Univ. of S. Ala.,* No. 15-00087-KD-N, 2015 U.S. Dist. LEXIS 137286 (S.D. Ala. Sep. 22, 2015).

The cases Defendant cites in its Memorandum do not support its arguments on temporal proximity. In *Santana v. Telemundo Network Grp., Ltd. Liab. Co.*, No. 22-13879, 2026 LX 77837 (11th Cir. Jan. 22, 2026) and *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361 (11th Cir. 2007), both cited by Defendant, the respective courts held that temporal proximity, *without more*, must be close. In the instant case, Plaintiff has pled retaliatory acts directly following her protected activity, and continuing until her inevitable termination. At a minimum, Plaintiff is entitled to develop evidence during discovery to support her well-pled allegations

**IV. Plaintiff has clearly articulated her North Carolina wrongful discharge claim.**

Plaintiff has additionally alleged an unlawful discharge based on her age and sex, against the declared public policy of North Carolina to "protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgment on account of age or sex...." N.C. Gen. Stat. § 143-422.2. "To properly plead a wrongful discharge case, Plaintiff must identify a state public policy and then allege that [s]he was discharged in violation of that policy. *See Whiting v. Wolfson Casing Corp*. 173 N.C. App. 218, 222, 618 S.E2d 750, 753 (2005); *Head v. Adams Farm Living, Inc.,* 242 N.C. App. 546, 552, 77; *McDonnell v. Tradewind Airlines, Inc.*, 194 N.C. App. 674, 677-78, 670 S.E. 2d 302, 305. Here, and in accordance with the prevailing caselaw for North Carolina

Plaintiff has alleged she was an employee in North Carolina, and that she was discharged from her employment based on her age and sex, in violation of the public policy that prohibits discrimination based on those protected classes. She does not limit her wrongful discharge claim to retaliation, and North Carolina law protects her, even following the change in venue.

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendant's Motion in its entirety, so that she may proceed to a resolution on the merits without undue delay.

Respectfully submitted this the 2nd day of September, 2026.

*/s/ R. Michael Elliot*
R. Michael Elliot
NC State Bar No. 42806
Special Admission—Middle District of Florida; Appearing pro hac vice under M.D. Fla. Local Rule 2.01(c)
Elliot Morgan Parsonage, PLLC
300 E Kingston Ave, Suite 200
Charlotte, NC 28203
Phone: (704) 707-3705
Facsimile: (336) 724-3335
michaelelliot@emplawfirm.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I certify that on September 2, 2026, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

Alissa A. Kranz
Christine E. Howard, Esq.
choward@fisherphillips.com
akranz@fisherphillips.com
FISHER & PHILLIPS, LLP
401 E Jackson Street
Suite 3100,
Tampa, Florida 33602

*Counsel for Defendant*

/s/ Michael Elliot
Attorney