UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JANNA GRANT,

Plaintiff,

v. Case No. 8:26-cv-1985-VMC-SPF

ASHLEY FURNITURE INDUSTRIES, LLC,

Defendant.
_______________________________/

**ORDER**

This matter is before the Court on consideration of Defendant Ashley Furniture Industries, LLC's Partial Motion to Dismiss Amended Complaint, filed on August 5, 2026. (Doc. # 47). Plaintiff Janna Grant responded on September 2, 2026. (Doc. # 63). For the reasons that follow, the Motion is granted in part and denied in part.

## I. Background

In this action, Ms. Grant brings claims against her former employer for violations of Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act ("ADEA"), and North Carolina Public Policy. (Doc. # 16).

Ms. Grant, a 59-year-old woman, worked for Ashley Furniture for nearly twenty years. (Id. at ¶¶ 4, 33). "[O]ther than for periodic furniture markets out of state, all business

that [Ms. Grant] conducted for [Ashley Furniture] was in the state of North Carolina." (Id. at ¶ 10). During her tenure at Ashley Furniture, Ms. Grant "was never the subject of any disciplinary action, and she was never made aware of any performance problems." (Id. at ¶ 11). Indeed, Ms. Grant "was commended for her performance, and her sales numbers, leadership, and commitment to Ashley," and "met or exceeded any reasonable expectations of her role." (Id.).

Ms. Grant's employment with Ashley Furniture "was governed by one-year employment contracts that essentially 'auto-renewed' each year." (Id. at ¶ 48). Ms. Grant signed these contracts in North Carolina. (Id. at ¶ 49). Although she was classified as an independent contractor, Ms. Grant maintains that "[b]y any reasonable analysis or relevant factor, [she] was an employee of [Ashley Furniture]." (Id. at ¶¶ 13, 36).

In or around July 2022, Ms. Grant began reporting to a new supervisor, the Vice President ("the VP") of Casegoods for Ashley Furniture. (Id. at ¶ 37). The VP is a significantly younger man. (Id.). Ms. Grant "noted immediately that the VP treated similarly situated substantially younger and/or male employees more favorably. That fact was clearly evident from the way he interacted with his direct reports, but on multiple

occasions the VP was explicit about his preferences." (Id. at ¶ 38).

Ms. Grant's amended complaint details two specific interactions with the VP. On or about July 12, 2022, the VP asked Ms. Grant, "what [her] fiancé did for a living." (Id. at ¶ 39). Ms. Grant "indicated her shock at the question," but answered. (Id.). Upon giving her reply, the VP stated "that it 'sounded like' [Ms. Grant] 'didn't need to work' given her fiancé's career and income." (Id.). Ms. Grant verbally informed Ashley Furniture's president of the comment in or around August 2022. (Id. at ¶ 40).

Then, on or about January 2, 2023, during a phone conference, the VP told Ms. Grant, "'since you don't have kids,' and 'you've made enough money and [have] probably been smart with it, [you are] probably in a place where you could retire.'" (Id. at ¶ 42). This comment "concerned" Ms. Grant, which she "memorialized" in an email sent to the VP on January 7, 2023. (Id. at ¶ 43). In this email, Ms. Grant "indicated that she believed it showed gender and age animus and specifically noted the different way the VP treated [Ms. Grant's] substantially younger and/or male colleagues as compared to her." (Id.). The VP did not respond to the email. (Id. at ¶ 45). Ms. Grant verbally informed Ashley Furniture's

president of the incident approximately two weeks later and forwarded the email she sent to the VP to the president. (Id. at ¶ 44). Ashley Furniture's management team subsequently questioned the VP about the exchange. (Id. at ¶ 45). The VP "expressed frustration" after this to Ms. Grant. (Id.).

Following these events, "the VP was cold and hostile to [Ms. Grant], particularly as compared to her similarly situated substantially younger and/or male colleagues . . . [H]e was invariably condescending towards [her], ostracized her in her position, and seemed intent on pushing her from her position." (Id. at ¶ 46). The VP "never criticized her performance or her sales revenues, which," Ms. Grant contends, "remained excellent." (Id.). "Over the latter half of 2023, [Ashley Furniture]'s management shifted one large account from [Ms. Grant], and prepared [her] similarly situated substantially younger and/or male colleagues to assume her duties, in apparent anticipation of forcing her from the company." (Id. ¶ 47).

On or about November 29, 2023, the VP informed Ms. Grant that Ashley Furniture "was not continuing her employment nor renewing her contract for 2024." (Id. ¶ 51). "At the time of her termination, her contract extended from January 1, 2023, until December 31, 2023." (Id. ¶ 48). To date, Ms. Grant has

not been offered an explanation for this decision. (Id. at ¶ 52).

Upon her termination, Ms. Grant's job duties were distributed to men, some of whom were substantially younger. (Id. at ¶¶ 53-54). At least two of Ms. Grant's replacements "were more than fifteen years her junior." (Id. at ¶ 54).

On May 16, 2024, Ms. Grant filed a Charge with the Equal Employment Opportunity Commission ("EEOC") alleging sex, gender, and age discrimination and retaliation. (Id. at ¶ 57). On May 30, 2025, the EEOC issued Ms. Grant a notice of her right to sue. (Id. at ¶ 58).

Ms. Grant initiated this action in North Carolina state court on September 16, 2025. (Doc. # 1-1). Ashley Furniture removed the case to the District Court for the Middle District of North Carolina on October 29, 2025. (Doc. # 1). On July 15, 2026, the District Court for the Middle District of North Carolina granted Ashley Furniture's motion to transfer venue. (Doc. # 26). The case was subsequently transferred to this Court on July 16, 2026. (Doc. ## 27, 28).

Before the case was transferred to this Court, Ms. Grant filed an amended complaint which contains five causes of action: gender discrimination in violation of Title VII (First Claim for Relief), retaliation in violation of Title

VII (Second Claim for Relief), age discrimination in violation of the ADEA (Third Claim for Relief), retaliation in violation of the ADEA (Fourth Claim for Relief), and wrongful discharge in violation of the public policy of North Carolina (Fifth Claim for Relief). (Doc. # 16).

Now, Ashley Furniture moves for dismissal of the second, third, fourth, and fifth claims of the amended complaint under Federal Rule Civil Procedure 12(b)(6). (Doc. # 47). Ashley Furniture filed a supplement to its Motion, containing an exhibit which purports to be an Independent Contractor Agreement between the parties made effective January 1, 2023. (Doc. # 51-1). Ms. Grant has responded to the Motion (Doc. # 63), which is now ripe for review.

**II. Legal Standard**

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, the Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Hum. Servs., 901 F.2d 1571, 1573 (11th Cir. 1990). But,

> [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted). Courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The Court must limit its consideration to well-pled factual allegations, documents central to or referenced in the complaint, and matters judicially noticed. La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004), abrogated on other grounds by Twombly, 550 U.S. 544.

## III. Analysis

### A. ADEA Discrimination (Third Claim for Relief)

A prima facie case for an ADEA violation requires a plaintiff to establish that "(1) she belongs to a protected class, (2) she was subjected to an adverse employment action, (3) she was qualified to perform the job in question, and (4) her employer treated 'similarly situated' employees outside her class more favorably." Tynes v. Fla. Dep't of Juvenile Just., 88 F.4th 939, 944 (11th Cir. 2023) (citing McDonnell

Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)). But a plaintiff need not allege a prima facie case at the pleading stage. Davis v. Miami-Dade Cnty., No. 23-12480, 2024 WL 4051215, at *4 (11th Cir. Sep. 5, 2024). Rather, a plaintiff must merely allege "facts adequate to raise her right to relief above a speculative level." Buchanan v. Delta Air Lines, Inc., 727 F. App'x 639, 642 (11th Cir. 2018).

In its Motion, Ashley Furniture insists that the third claim for relief be dismissed because Ms. Grant's "comparator allegations are entirely conclusory and devoid of required factual specificity." (Doc. # 47 at 4). It contends that the allegations that "the VP treated similarly situated substantially younger employees more favorably, and that her duties were distributed to substantially younger colleagues" are "textbook conclusory statements." (Id. at 5) (internal citations and quotation marks omitted). "Critically," it argues, Ms. Grant "does not identify a single comparator by name, job title, age, qualifications, territory, or performance history. She does not allege that any specific younger employee was similarly situated in all material respects yet treated more favorably." (Id.).

Under the Rule 12(b)(6) standard, however, it is not necessary for Ms. Grant to specifically identify the younger

employees by whom she was replaced and those employees' qualifications to state a plausible claim. Indeed, no allegation of a younger replacement is required at all. See Rodriguez v. Orlando Sun Resort & Spa, LLC, No. 6:08-cv-2117-ACC-KRS, 2009 WL 10670721, at *2 (M.D. Fla. Sept. 9, 2009) (explaining that a plaintiff "is not required to 'allege that he was replaced by a substantially younger employee' in order to defeat a motion to dismiss" because "a plaintiff need not establish a prima facie case of discrimination to survive a motion to dismiss"); Davis, 2024 WL 4051215, at *6 ("The County finally takes issue with the fact that [a replacement] has not been alleged to be a materially similarly situated comparator. No matter. As we've already explained at length, a plaintiff need not make out a McDonnell Douglas prima facie case – which discusses materially similarly situated comparators – in order to allege a discrimination claim.").

Ashley Furniture contends that the remaining allegations "require the speculative 'inferential leaps' that Twombly and Iqbal prohibit" or "describe[] subjective perceptions of interpersonal treatment that do not, without more, give rise to a plausible inference of age discrimination." (Doc. # 47 at 6). The Court disagrees. Ms. Grant alleges two specific interactions with the VP that raise an inference of

discrimination. (Doc. # 16 at ¶¶ 39, 42). She then describes the subsequent reassignment of her workload to younger male colleagues (Id. at ¶ 47), hostility from her supervisor (Id. at ¶ 46), and her eventual termination. (Id. at ¶ 51). While it may be true that these interactions alone are not dispositive of discrimination, they are sufficiently alleged for "the Court to draw the reasonable inference that the employer had discriminatory intent." Davis, 2024 WL 4051215, at *5 (internal citation omitted).

Taking all allegations in the light most favorable to Ms. Grant, the amended complaint has sufficiently stated a plausible claim for age discrimination. Accordingly, the Motion is denied as to the third claim for relief.

**B. Retaliation (Second and Fourth Claims for Relief)**

"To establish a *prima facie* case of discriminatory retaliation, under Title VII, . . . and the ADEA, a plaintiff must show that: (1) he participated in a protected activity; (2) he suffered an adverse employment action; and (3) there was a causal connection between the plaintiff's participation in the protected activity and the adverse employment action." Barnett v. Athens Reg'l Med. Ctr. Inc., 550 F. App'x 711, 714 (11th Cir. 2013) (internal citation omitted). Like a claim of discrimination, plaintiffs "need not allege a prima facie

case under McDonnell Douglas" to "withstand a motion to dismiss," but the amended complaint still must provide "enough factual material" to plead a plausible claim of retaliation. Smith v. Pepsi Bottling Grp., No. 24-11597, 2026 WL 937070, at *6 (11th Cir. Apr. 7, 2026); see Buchanan, 727 F. App'x at 642 ("Although her complaint would not have established a *prima facie* case under McDonnell Douglas, [plaintiff] alleged facts adequate to raise her right to relief above a speculative level. This was all that was required at the pleading stage.").

Ashley Furniture asserts that Ms. Grant's "retaliation claims fail because she has not alleged a causal connection between her protected activity and the termination decision." (Doc. # 47 at 7). Specifically, it contends that "nearly nine months passed between [Ms. Grant's] last protected activity and her termination – far exceeding the temporal proximity required." (Id. at 8).

"The burden of alleging causation can be satisfied by factual allegations showing close temporal proximity between the protected activity and the adverse employment action." Santana v. Telemundo Network Grp., LLC, No. 22-13879, 2026 WL 180272, at *8 (11th Cir. Jan. 22, 2026). "At the pleading stage, however, the absence of close temporal proximity does

not necessarily defeat a retaliation claim." Petrelli v. Renal Advantage, Inc., No. 26-14077, 2026 U.S. Dist. LEXIS 83739, *8 (S.D. Fla. 2026) (finding dismissal on causation grounds would be premature because "causation may be shown through means other than temporal proximity, and because the record is undeveloped."). Rather, "[t]o establish causation, a plaintiff must plausibly allege facts that would show 'the decision-makers were aware of the protected conduct, and that the protected activity and the adverse actions were not wholly unrelated.'" Santana, 2026 WL 180272, at *8 (citing to Shannon v. Bell-South Telecomms., Inc., 292 F.3d 712, 716 (11th Cir. 2002)).

Like the plaintiff in Petrelli, dismissal at this stage for failure to establish close temporal proximity is inappropriate. Ms. Grant has sufficiently pled factual details of hostility (Doc. # 16 at ¶ 46), reassignment of work (Id. at ¶ 47), and eventual termination (Id. at ¶ 51) following her complaints to the VP and the president. Taking all allegations in the light most favorable to Ms. Grant, the amended complaint has sufficiently stated plausible claims of retaliation under Title VII and the ADEA. Accordingly, the Motion is denied as to the second and fourth claims for relief.

**C. Wrongful Discharge in Violation of North Carolina Public Policy Violation (Fifth Claim for Relief)**

Ms. Grant's fifth claim for relief is for wrongful discharge in violation of North Carolina public policy articulated in North Carolina General Statutes Sections 143-422.2. (Doc. # 16 at ¶¶ 83, 90). Ashley Furniture argues that this claim should be dismissed for four reasons, including that "[Ms. Grant] cannot maintain a wrongful discharge claim because she alleges a term-of-year contract, and wrongful discharge in North Carolina applies only to at-will employees." (Doc. # 47 at 9) (internal citations and quotation marks omitted). The Court agrees and therefore does not address Ashley Furniture's other arguments.

"Wrongful discharge in violation of public policy in North Carolina applies only to at-will employees." Googerdy v. N. C. Agr. & Tech. State Univ., 386 F. Supp. 2d 618, 626 (M.D.N.C. 2005) (citing Wagoner v. Elkin City Schs.' Bd. of Educ., 440 S.E.2d 119, 125 (N.C. App. Ct. 1994)). "Breach of contract is the proper claim for a wrongfully discharged employee who is employed for a definite term or an employee subject to discharge only for just cause." Wagoner, 440 S.E.2d at 588 (internal citation and quotation marks omitted).

Ms. Grant does not allege to be an at-will employee. (Doc. # 16). Indeed, she admits that her employment at Ashley Furniture "was governed by one-year employment contracts that essentially 'auto-renewed' each year," and that "[a]t the time of her termination, her contract extended from January 1, 2023 until December 31, 2023." (Id. ¶ 48). Reading the facts in the light most favorable to Ms. Grant, "she is nonetheless not entitled to assert the tort of wrongful discharge because the tort of wrongful discharge arises only in the context of employees at will." Wagoner, 440 S.E.2d at 588.

Therefore, the fifth claim for relief is dismissed. The Court, however, will give Ms. Grant leave to amend.

Accordingly, it is now

**ORDERED**, **ADJUDGED**, and **DECREED**:

(1) Defendant Ashley Furniture Industries' Motion to Dismiss Plaintiff's First Amended Complaint (Doc. # 47) is **GRANTED** in part and **DENIED** in part as set forth herein.

(2) If she wishes to amend, Ms. Grant must file her second amended complaint within 14 days of this Order.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 27th day of October, 2026.

Virginia M. Hernandez Covington

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE